IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: * | |
| BILTWOOD PROPERTIES LLC, * | CHAPTER 11 |
|     Debtor-in-Possession * | |
| * | CASE NO. 1:11-bk-07600MDF |
| ORRSTOWN BANK, * | |
|     Movant * | |
| * | |
| v. * | |
| * | |
| BILTWOOD PROPERTIES LLC, * | |
|     Respondent * | |

**OPINION**

Orrstown Bank ("Orrstown") filed a motion for relief from the automatic stay (the "Motion") to pursue mortgage foreclosure proceedings against real property owned by Biltwood Properties LLC ("Debtor"). For the reasons set forth below, the Motion will be granted.

**I. Procedural History**

Debtor filed a voluntary petition under Chapter 11 on November 11, 2011. On Schedule A, Debtor listed its interest in real property with a value of $700,000 located at 544 Buchanan Trail West, Greencastle, Franklin County, Pennsylvania (the "Greencastle Property" or the "Property"). On March 15, 2012, Orrstown filed the Motion stating that as of December 9, 2011, it held a claim against Debtor of approximately $331,520 secured by first, second, and third liens against the Greencastle Property. Orrstown also asserted that the Property was subject to a fourth mortgage held by the Franklin County Area Development Corporation ( the "FCADC") and a fifth mortgage held by Larry and Shirley DiMarco (the "DiMarcos"). In its schedules, Debtor lists the total face amount of the mortgages held by the FCADC and the DiMarcos at $200,000. In

addition to the mortgage debt, Debtor reported outstanding real estate taxes owing to Franklin County of $17,846.

Orrstown asserts that it is entitled to relief because Debtor does not have equity in the Property, and it is not necessary to an effective reorganization. This assertion is supported by an appraisal setting the value of the Property at $335,000. Orrstown further argues that Debtor has failed to pay post-petition real estate taxes, which constitutes a breach of the mortgage agreement. Debtor counters that it is providing Orrstown with adequate protection through equity in the Property and by making regular mortgage payments.

A hearing on this matter was held on April 17, 2012. Debtor and Orrstown each presented the testimony of an appraiser who offered an opinion as to the value of the Property. No briefs were requested, thus this matter is ready for decision.[1]

## II. Facts

The Greencastle Property is a 1.74 acre parcel of commercial real estate with a light industrial building of 18,507 square feet. The assessed value of the land and buildings is $62,190. When the county equalization ratio is applied to the assessed value, it produces an implied market value of $474,510. The deed transferring the Property to Debtor, which is recorded in the Franklin County Register and Recorder's Office, states that the Property was transferred to Debtor on November 29, 2001 for a sale price of $250,000.

---

[1] I have jurisdiction to hear this matter pursuant to 28 U.S.C. §§157 and 1334. This matter is core pursuant to 28 U.S.C. §157(b)(2)(A),(B) and (O). This Opinion constitutes findings of fact and conclusions of law made under Fed. R. Bankr. P. 7052, which is applicable to contested matters pursuant to Fed. R. Bank. P. 9014.

Debtor acquired the Property in 2001 and leased the existing building to a related company, which operated a millwork and powder coating business from the site. At the time of the hearing in this matter the millwork business had closed. The powder coating business was operating, but the owner was in the process of selling the business to an unrelated third party. Debtor's principal testified that if the purchase was consummated, Debtor would receive $1350 per month in rent from the new tenant. Only about one-third of the building is occupied by the powder coating business; the remainder is vacant. At the time of the hearing, the Greencastle Property was listed for sale with FCADA at a price of $695,000. Debtor's principal stated that Debtor intended to list the property with a realtor and lower the asking price to $525,000 as determined by Debtor's appraiser.

Before Debtor filed its petition, Orrstown had commenced foreclosure proceedings due to Debtor's failure to pay real estate taxes for 2009, 2010, and 2011. The failure to pay real estate taxes constituted a breach of the mortgage loan agreement. As of April 13, 2012, Debtor owed $26,603.46 in delinquent real estate taxes. At the hearing, Debtor's principal represented that Debtor would pay future real estate taxes as they became due until the real estate was sold.

*A. Orrstown's appraisal*

Orrstown's appraiser, Tim Ausherman ("Ausherman"), appraised the Property on February 23, 2012 using the cost and sales comparison approaches. To arrive at the replacement cost of the building on a comparable site, Ausherman first calculated the land value using the sales comparison approach. Three vacant commercial properties of approximately one to two acres sold in Franklin County within two years of the appraisal date were compared to the subject. After adjusting for factors such as proximity to the Greencastle Property, location, size,

3

Case 1:11-bk-07600-MDF    Doc 44    Filed 05/24/12    Entered 05/25/12 12:37:12    Desc
Main Document    Page 3 of 14

and topography, Ausherman set the market value of the land at $196,000. He then estimated the replacement cost of the building and improvements, which were depreciated based upon an effective age of 25 years for the building and 7 years for site improvements. These adjustments produced a value for the improvements of $247,537. When the land cost of $196,000 was added to the depreciated value of the improvements of $247,537, it produced a rounded value under the cost approach of $444,000.

To calculate the value of the Greencastle Property under the sales comparison approach, Ausherman analyzed four sales of commercial property in Franklin County that had closed within three and one-half years of the date of the appraisal and one property that was under contract when the appraisal was prepared. After adjusting the comparable sales for location, sale date, site size, improvements and building design, age, size, and condition, Ausherman valued the Greencastle Property at $335,000.

*B. Debtor's appraisal*

Debtor's appraiser, Robert Gearhart ("Gearhart"), also used the cost[2] and comparable sales approaches to value the Greencastle Property. Gearhart determined the cost approach by valuing the land through comparable sales of vacant land, calculating the cost to build a similar structure and then depreciating the replacement cost of the building by 33% to account for the effective age of the structure. Three vacant commercial properties of approximately one to four acres sold in Franklin County within fourteen months of the appraisal date were compared to the subject. After adjusting for factors such as location, size, and the availability of public utilities, Gearhart set the market value of the land at $156,600 or $89,080 per acre. Gearhart determined

---

[2]Gearhart described the cost approach as the "reconstruction cost approach."

4

that it would cost $670,285 to construct the building and after depreciation, the current structure was valued at $449,090. Adding the rounded depreciated value of the building of $450,000 to a rounded value for the land of $150,000, Gearhart calculated the value of the Property under the cost approach at $600,000.

To calculate the value of the Greencastle Property under the sales comparison approach, Gearhart analyzed three sales of commercial property in Franklin County that had closed within approximately two years of the date of the appraisal and one property that closed six years before the appraisal date.[3] After adjusting the comparable sales for sale date, location, site size, building size and condition, and the existence of additional storage, Gearhart valued the Greencastle Property at $525,000.

Both appraisers agreed that values in the county have remained flat since the onset of the recession in 2008. Each appraiser used at least one property obtained by the seller through foreclosure as a comparable sale. Both appraisers also agreed that the highest and best use of the property was for commercial or light manufacturing enterprises.

### III. Discussion

Section 362(a) of the Bankruptcy Code provides that most actions against property of a Chapter 11 debtor are stayed. Under 11 U.S.C. § 362(d)(1), a creditor may be granted relief from the automatic stay for cause, including a lack of adequate protection for its interest in the property. Relief also may be granted if a debtor has no equity in the property and the property is not necessary to an effective reorganization. 11 U.S.C. § 362(d)(2). The party requesting relief

---

[3] Only one comparable sale property was used by both appraiser – the September 22, 2011 sale of a commercial building on five acres located in Mercersburg, PA.

5

from the stay has the burden of proof on the issue of a debtor's equity in the property, and the party opposing the relief has the burden of proof on all other issues. 11 U.S.C. § 362(g).

   *A. The adequate protection requirement of 11 U.S.C. § 362(d)(1)*

Orrstown asserts that it should be granted relief because its interest is not adequately protected. Adequate protection comes in a variety of forms, including periodic payments, additional or replacement liens, and other relief that provides the "indubitable equivalent" to the protections afforded to the creditor outside of bankruptcy. *Delaware Valley Sav. & Loan Assn. v. Curtis (In re Curtis)*, 9 B.R. 110, 112 (Bankr. E.D. Pa. 1981) (citing *In re Murel Holding Corp.*, 75 F.2d 941, 942 (2d Cir. 1935)). *See also* 11 U.S.C. § 361. Typically, adequate protection is provided to a creditor through periodic payments. Here, Orrstown admits that Debtor has made all post-petition mortgage payments. It asserts, however, that Debtor's failure to pay pre-petition real estate taxes for three years has impaired Orrstown's lien status so the mortgage payments alone fail to provide adequate protection.

Under Pennsylvania law, taxes imposed on real property by counties, cities, and school districts are a first lien on real property, subject only to taxes imposed by the Commonwealth. 53 P.S. § 7103; *In re Com., Dept. of Transp.*, 36 Pa. Cmwlth. 346, 350, 388 A.2d 344, 346 (1978). It is undisputed that the three liens held by Orrstown, which total $331,520, are subordinate to the lien for unpaid real estate taxes. Therefore, the unpaid real estate taxes of $26,603.46 constitute a first lien against the Greencastle Property. Unless the value of the Greencastle Property exceeds $358,123, Orrstown's lien is impaired. This is true even though Debtor is making regular mortgage payments to Orrstown. If the value of the Property exceeds the amount

6

of the real estate tax lien and the first, second and third mortgage liens of Orrstown, however, Debtor may be providing adequate protection to the bank in the form of an "equity cushion."

An equity cushion is the value of the property after the claim of the creditor seeking relief from the automatic stay and all senior claims are deducted. *Nantucket Investors II v. Cal. Fed. Bank (In re Indian Palms Assoc., Ltd.)*, 61 F.3d 197, 207 (3d Cir. 1995). To determine whether Orrstown's interest in the Greencastle Property is protected by an equity cushion, this Court must first determine its value.

B.  *The equity requirement under 11 U.S.C. § 362(d)(2)*

Under § 362(d)(2) the Court must conduct a slightly different analysis to determine whether Debtor has equity in the Property and whether it is necessary for an effective reorganization. Whether a debtor has any equity in a property for purposes of § 362(d)(2) is determined by comparing the amount of all liens against the property to its value, not just the lien in question and all superior liens. *Id.* at 206. "All encumbrances are totalled to determine equity whether or not all lienholders have requested relief from the stay." *Nazareth Nat'l Bank & Trust Co., v. Trina-Dee, Inc. (In re Trina-Dee, Inc.),* 26 B.R. 152, 154 (Bankr. E.D. Pa 1984), *aff'd*, 731 F.2d 170 (3d Cir. 1984). Therefore, while different approaches are pursued when calculating equity for purposes of (d)(1) when compared to (d)(2), both analyses require that a court determine the value of the collateral.

C.  *Analysis of the appraisals*

In the within case, both appraisers used similar approaches to evaluate the Greencastle Property. Both employed two of the three generally accepted valuation methods – the cost approach and the comparable sales approach. Both appraisers determined that the income

7

Case 1:11-bk-07600-MDF    Doc 44    Filed 05/24/12    Entered 05/25/12 12:37:12    Desc
Main Document    Page 7 of 14

approach was not an appropriate methodology to determine the value of the Greencastle Property. Using the cost approach, Gearhart valued the Property at $600,000, and Ausherman valued it at $444,000. Although both appraisers valued the Property under the cost approach, neither appraiser relied upon this method to any significant extent when he determined its value. Using the sales comparison approach, Gearhart valued the Property at $525,000 while Ausherman valued it at $335,000.

Both experts were qualified commercial real estate appraisers, and both conducted a thorough review of the premises and relevant real estate records. Both appraisers had difficulty locating comparable properties considering the sluggishness of the commercial real estate market in Franklin County during the past several years. The comparable sales they did select required extensive adjustments. Having reviewed the analysis of comparable sales in both appraisals, I find Ausherman's opinion as to value more persuasive.

Although neither appraiser relied on the cost approach, Ausherman's methodology was more detailed and better supported than Gearhart's approach. For example, both appraisers describe the building as being partially concrete block and partially steel. Gearhart simply provides an overall price per square foot of $32.89. Ausherman, however, assigned a different cost per square foot for portions of the building that were steel as compared to portions that were masonry. Ausherman included a value for site improvements, namely the parking lot, which were not valued separately by Gearhart. The most significant flaw in Gearhart's cost methodology, however, was his calculation of depreciation. Both appraisers opined that the effective age of the Greencastle Property was 25 years. Gearhart determined that the life expectancy of the property

8

was 45 years.[4] Under the age/life method of depreciation used by both appraisers, the effective age of the building is divided by its life expectancy to determine a depreciation percentage, which is then applied to the replacement cost.[5] Gearhart's report stated that using the age/life method, the appropriate depreciation factor was 33%. Had Gearhart performed the calculation correctly, he would have concluded that the correct depreciation factor was 56% (effective age (25) ÷ life expectancy (45) = 56%). This change in the depreciation factor reduces the value of a replacement building from approximately $450,000 to approximately $378,000. Accordingly, had the reconstruction cost been calculated correctly, the value reached by Gearhart under the cost approach would have been $533,000 rather than approximately $600,000.

While this error undermined Gearhart's credibility generally, it had no impact on the final calculation because both appraisers primarily relied upon the sales comparison approach rather than the cost approach. Each appraiser compared the Greencastle Property to four "comparable" sales of commercial property. The only comparable sale they had in common was a property located in Mercersburg. Both appraisers had difficulty identifying similar buildings on similar sized lots sold within the last three years. The adjustments made to the Mercersburg property demonstrate the limitations of the sales comparison approach when the subject and a comparable property are dissimilar in several significant aspects.

---

[4] Ausherman determined that the life expectancy of the Greencastle Property was 35 years. The basis for this discrepancy was not explored in the testimony.

[5] Appraisers Institute, *The Appraisal of Real Estate* 392 (12th ed. 2001).

9

Case 1:11-bk-07600-MDF    Doc 44    Filed 05/24/12    Entered 05/25/12 12:37:12    Desc
Main Document    Page 9 of 14

Gearhart made adjustments to the value of the Mercersburg property to arrive at an indicated value for the Greencastle Property of $538,700. Comparing the same properties, Ausherman adjusted the sale price of the Mercersburg property to produce an indicated value of $263,370 – less than half the value calculated by Gearhart. Both appraisers agreed that the Greencastle Property enjoyed a location that was superior to that of the Mercersburg property with Gearhart concluding that this variation justified an adjustment of $200,000. Ausherman, on the other hand, concluded that the inferior location of the Mercersburg property only justifed an adjustment of $125,000. Gearhart deducted $48,900 for the smaller site size of the Greencastle Property, while Ausherman determined that the adjustment for the same factor should be $244,500.[6] Their positions, however, were reversed when building size was considered. Gearhart's adjustment for the smaller size of the Greencastle Property was $112,400, while Ausherman only reduced the value by $57,130.

Gearhart found the Greencastle Property to be in average condition and the Mercersburg property to be in "average -" condition. This slightly less desirable description caused Gearhart to add $100,000 to the indicated value of the subject. In a similar finding, Ausherman found that the building quality of the Greencastle Property was superior to the Mercersburg property, but only added $50,000 to its indicated value. Finally, Ausherman determined that the improvements at the Mercersburg property were superior and deducted $10,000 from the indicated value. No similar adjustment was made by Gearhart. The appraisers did not provide evidence to substantiate these adjustments so it was difficult for the Court to determine which ones were

---

[6] The site size for the Mercersburg property is 5 acres as compared to the 1.74 acre size of the Greencastle Property.

more realistic. Based upon the reports and the testimony presented, however, the Court finds that Ausherman's opinion as to value is better supported primarily because some of Gearhart's adjustments were inconsistent.

The adjustments most difficult to understand in Gearhart's analysis of comparable sales were those related to land area. In computing comparable land values as part of the cost analysis, Gearhart used a per acre adjustment of $100,000. For example, when comparing the subject (1.74 acres) with a comparable land sale located in State Line, Pennsylvania (2 acres), Gearhart deducted $26,000 from the $250,000 sale price of the comparable property. The acreage difference between the two properties was .26 acres, thus the $26,000 adjustment was based upon a per acre value of $100,000. When adjusting for differences in acreage using the comparable sales approach, however, Gearhart only valued the acreage differences at $15,000 per acre. He was unable to explain why the two approaches would use such different acreage adjustments, stating that this was his typical methodology.[7]

Ausherman, however, used the same per acre value for calculating the value of vacant lots in the cost approach as he did when making adjustments to comparable sales. Although there probably is a rational basis for distinguishing between the per acre value of vacant versus improved land, I find Ausherman's consistent approach of adjusting value for lot size at $75,000,

---

[7]One adjustment Gearhart failed to make that the Court found troubling was an adjustment to the value his second comparable sale (80 Commerce Drive, Greencastle) for its superior condition when compared to the subject. If Gearhart had made the same adjustment to the second comparable sale that he made to the fourth comparable sale (both of which were in "good" rather than "average" condition), the value of the second comparable would have been $285,500 rather than $535,500.

11

whether the land was vacant or improved, to be more logical than the use of a range of values from $15,000 per acre to $100,000 per acre for similar properties.[8]

   D. *Relief from the automatic stay*

Having determined that Ausherman's opinion as to value is more credible, I find that the value of the Greencastle Property for the purpose of determining whether Orrstown is entitled to relief from the automatic stay is $335,000. When the outstanding real estate taxes of $26,603.46 are added to the outstanding amount on the Orrstown debt of $331,520, the value of the property ($335,000) is less than the amount of the tax lien and Orrstown's mortgage ($358,123). Therefore, I find that Orrstown's lien is not protected by an equity cushion and that further, Debtor has no equity in the Greencastle Property. Even if Debtor continues to make regular monthly mortgage payments, Orrstown's secured position is not adequately protected because of the existence of a superior tax lien. Therefore, under 11 U.S.C. §362(d)(1), relief from the automatic stay will be granted.

Orrstown also has alleged that relief should be granted under §362(d)(2). Having determined that Debtor does not have equity in the property, I must consider whether the property is necessary to an effective reorganization. In *United Sav. Ass'n v. Timbers of Inwood Forest Assocs., Ltd,* 484 U.S. 365 (1988), the Supreme Court explained that to meet its burden of proof under § 362(d)(2), a debtor must show that there is " 'a reasonable possibility of a successful

---

[8]While Ausherman attributed more weight to variations in acreage than did Gearhart, he made lower adjustments based upon building size. Ausherman adjusted the variations in building size at a rate of $10 per square foot, while Gearhart adjusted the values at $20 per square foot. The Court has no basis upon which to determine which approach is more accurate. Therefore, this distinction does not factor into the Court's determination that Ausherman's assessment of value was more credible than the value offered by Gearhart.

Case 1:11-bk-07600-MDF    Doc 44    Filed 05/24/12    Entered 05/25/12 12:37:12    Desc
Main Document    Page 12 of 14

reorganization within a reasonable time.' " *Id*. at 367 (citations omitted). As noted by the Court of Appeals for the Third Circuit, while "a lift stay hearing should not be transformed into a confirmation hearing," "[t]he 'effective reorganization' requirement enunciated by the Supreme Court . . . require[s] a showing by a debtor . . . that a proposed or contemplated plan is not patently unconfirmable and has a realistic chance of being confirmed." *John Hancock Mut. Life Ins. Co. v. Route 37 Business Park Assocs.*, 987 F.2d 154, 157 (3d Cir. 1993) (quoting *In re 266 Washington Assocs.,* 141 B.R. 275, 281 (Bankr. E.D. N.Y. 1992), *aff'd,* 147 B.R. 827 (E.D. N.Y. 1992)).

In the within case Debtor has not proposed a plan and is attempting to sell the Greencastle Property at a price far in excess of market value.[9] At the hearing on this matter, Debtor stated that it would be lowering the asking price to $525,000 based on Gearhart's appraisal. This price, however, is still significantly above market value as determined by this Court. Accordingly, this strategy is unlikely to produce a successful result. Debtor introduced no other evidence at the hearing to meet its burden to establish that there is a reasonable likelihood that it can successfully reorganize within a reasonable time. Accordingly, it has failed to meet its burden under 11 U.S.C. § 362(d)(2)(B). Therefore, relief from the automatic stay also will be granted under § 362(d)(2).

### IV. Conclusion

For the reasons set forth above, Orrstown has met its burden to prove that Debtor lacks equity in the Greencastle Property. Debtor has failed to prove that it has provided Orrstown with

---

[9]As an alternative to selling the Greencastle Property, Debtor has been attempting to lease areas of the building not being used by the powder coating business, but with no success.

adequate protection or that the property is necessary for an effective reorganization. An order will be entered granting Orrstown relief from the automatic stay to proceed with the action it commenced in state court prior to the filing of the petition.

By the Court,

*Mary D. France*
Chief Bankruptcy Judge

Date: May 24, 2012

14

Case 1:11-bk-07600-MDF    Doc 44    Filed 05/24/12    Entered 05/25/12 12:37:12    Desc
Main Document    Page 14 of 14

adequate protection or that the property is necessary for an effective reorganization. An order will be entered granting Orrstown relief from the automatic stay to proceed with the action it commenced in state court prior to the filing of the petition.

By the Court,

*Mary D. France*
Chief Bankruptcy Judge

Date: May 24, 2012